## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:23-CR-149 |
| | : | |
| v. | : | (Judge Mannion) |
| | : | |
| JOSEPH ATSUS, | : | (Electronically Filed) |
| | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW, the United States of America, by and through its attorneys, Brian D. Miller, United States Attorney for the Middle District of Pennsylvania, and James M. Buchanan, Assistant United States Attorney, and files this Sentencing Memorandum regarding the defendant's January 13, 2026, Sentencing Hearing.

## I.    INTRODUCTION

After being found guilty at a nearly month-long jury trial, the defendant stands convicted of four of the six counts in which he was charged, namely Counts 1, 2, 3, and 4 of the Indictment, charging him with Conspiracy to Commit Theft of Major Artwork, Concealment and disposal of Major Artwork, and Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §371 (Count 1), Theft of Major

Artwork, in violation of 18 U.S.C. §§668 and 2 (Count 2: Everhart Museum), and Concealment or Disposal of Major Artwork, in violation of 18 U.S.C. §§668 and 2 (Counts 3-4, Everhart Museum and Space Farms Zoo & Museum), and is awaiting his sentencing hearing. Defendant Atsus was acquitted of Counts 7 and 11 as charged in the Indictment (Concealment or Disposal of Major Artwork from Ringwood Manor and the Yogi Berra Museum & Learning Center). He is appropriately categorized by the Presentence Report ("PSR"), as having a Criminal History Category of I and is subject to guidelines range of 78- and 97-months' imprisonment. (PSR¶ 81).

## II.    HISTORY

On June 5, 2023, a Grand Jury seated in Scranton, Pennsylvania, returned a thirteen-count Indictment charging defendant Joseph Atsus with the six counts described above. The Indictment further charged co-defendants Nicholas Dombek, Damien Boland and Alfred Atsus with some or all of the same criminal conduct. (Doc. 1).

These charges stem from a 20-year long criminal conspiracy perpetrated by the defendant, his co-defendants, and several charged and uncharged co-conspirators, including Thomas Trotta, Dawn Trotta,

Daryl Rinker, Ralph Parry, and Frank Tassiello.  The conspiracy involved a decades-long agreement to break into museums and other institutions around the country, steal objects of cultural heritage, as that term is defined in Title 18, United States Code, §688, and other valuable items, and transport those items back to Pennsylvania where they often be melted down into component parts, before those parts would ultimately be transported to other locations, notably New York City, and sold for cash.

Defendant Joseph Atsus was a prominent and engaged member of that conspiracy.  His role within the conspiracy was to aid himself and others in the planning of the crimes and then drive one or more co-conspirators to several museums for the other co-conspirators to break into the museums and steal items of cultural heritage.  During the planning portion of these crimes, the conspirators would conduct reconnaissance or "casing" trips to the sites of the planned burglaries where Atsus and others would pose as tourists while simultaneously "casing" the museums' security measures, ingress and egress points, the structure of physical displays, and identify the items which the conspirators would later come back and steal.  Atsus is captured on

3

video conducting such a "casing" at the Space Farms Zoo and Museum prior to the June 28, 2006, break-in and theft from that location. Defendant Atsus also posed as a prospective member at the Scranton Country Club prior to the break-in and theft at that location.  In that guise, he was able to gain essential information for the conspirators about the location of valuable golf trophies and other memorabilia.

Defendant Atsus also acted as the driver for his co-conspirators during the thefts from: (1) Keystone College located in Factoryville, Pennsylvania; (2) the Space Farms Zoo & Museum located in Wantage, New Jersey; (3) the Sterling Hill Mining Museum in Ogdensburg, New Jersey; (4) Ringwood Manor, located in Ringwood, New Jersey, and; (5) the Yogi Bera Museum & Learning Center, located in Little Falls, New Jersey.

For his participation in these crimes, Defendant Atsus shared in the proceeds derived from selling the stolen goods, along with his other co-conspirators. Many of the stolen items were stripped of valuable gems and melted down into "pucks" or small discs of valuable metals. These items were then sold for cash in New York City by co-conspirators Boland, Trotta, Dombek, and others.

4

Atsus also shared in the spoils of the items that were not able to be melted down, such as the antique firearms that were stolen the from Ringwood Manor Museum and Space Farms Zoo & Museum, to which Atsus acted as the driver to and from the theft.  It also proven at trial that Atsus received cash payments for role in several museum thefts, including $500 for his participation in the Ringwood Manor theft, $1,700 for his participation in the Yogi Berra Museum & Learning Center theft, and $17,000 for his participation in the Sterling Hill Mining Museum theft.

On January 13, 2025, trial commenced against all four defendants charged in the Indictment, including Joseph Atsus.  During the Government's case-in-chief, several co-conspirators agreed to cooperate and testified regarding the conspiracy, including Thomas Trotta, Dawn Trotta, and Ralph Parry.[1]  The Government also admitted a "casing" video of Atsus and Thomas Trotta at the Space Farms Zoo & Museum in which Atsus and Trotta discuss the value of the displayed items, the best places to park the getaway car during the burglary, and how long

---

[1] Another cooperating co-conspirator, Daryl Rinker, passed away prior to the commencement of trail and was unable to testify.

the police would take in responding to the museum after the burglary. The Government further admitted the 1861 Colt Dragoon pistol turned into authorities by co-defendant Damien Boland's aunt and which had been stolen by Trotta and Boland during the 2006 burglary of Space Farms Zoo & Museum, which defendant Atsus helped plan.

On February 7, 2025, the jury found defendant Atsus guilty of four of the six counts of which he was charged, including Count 1, Conspiracy to Commit Theft of Major Artwork, Concealment and Disposal of Major Artwork, and the Interstate Transportation of Stolen Property. (Doc. 305).

On December 10, 2025, the U.S. Probation Office completed the PSR. (Doc. 349). The PSR correctly found that Atsus' total offense level was 28 and that he had a Criminal History Category of I, resulting in a guidelines imprisonment range of 78 to 97 months. (PSR, ¶81).

Based upon the nature and circumstances of these offenses, the characteristics of the defendant, and the other factors listed in 18 U.S.C. §3553(a), discussed below, the Government recommends a sentence of 97 months' imprisonment.

## III.  ARGUMENT

Proper sentencing procedure follows a three-step process. First, the district court must make a determination of the sentencing guideline range. *Gall v. United States*, 552 U.S. 38, 50 (2007); *Peugh v. United States*, --- U.S. ---, 133 S. Ct. 2072, 2084 (2013); *United States v. Boney*, 769 F.3d 153, 159 (3d Cir. 2014). Second, the court must resolve any requested departures from the sentencing guidelines. *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Finally, the sentencing judge is required to fashion a sentence after making an individualized assessment of the defendant and considering all 18 U.S.C. § 3553(a) factors. *Gall*, 552 U.S. at 50; *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).

### A.    Step One – Sentencing Guidelines

The Defendant has raised three substantive objections to the PSR: (1) the two-level enhancement pursuant to U.S.S.G. §2B1.5(b)(5) for engaging in a pattern of misconduct involving cultural heritage resources or paleontological resources; (2) the restitution and loss amount attributable to the defendant because the defendant was acquitted of counts 7 and 11; and (3) that the defendant is entitled to a

7

two-level reduction in his offense level for being a zero-point offender pursuant to U.S.S.G. §4C1.1 (Doc. 350).

The Government agrees with the reasoning of the Probation Office, described in the First Addendum to the PSR, finding that the sentencing guidelines were correctly calculated.  (Doc. 350).

### The Two-Level Enhancement for Pattern of Activity Involving Cultural Heritage Resources Was Properly Applied

U.S.S.G. §2B1.5(b)(5)[2] states: "If the defendant engaged in a pattern of misconduct involving cultural heritage resources or paleontological resources, increase by 2 levels."

This enhancement should apply because the defendant clearly engaged in a pattern of misconduct involving cultural heritage resources, having been found guilty of three counts of either Theft of Major Artwork or Concealment/Disposal of Major Artwork, as well as a conspiracy offense in which it was alleged that he participated in several other crimes, namely the thefts from Keystone College, Sterling

---

[2] The Government is citing from the 2025 Edition of the United States Sentencing Commission Guidelines Manual which went into effect on November 1, 2025. Under U.S.S.G. §1B1.13, the Guidelines Manual in effect on the date of sentencing shall be used unless it would violate the *ex post facto* clause of the Constitution.

Hill Mining Museum, Ringwood Manor, the Yogi Berra Museum & Learning Center, and Scranton Country Club. As these crimes involve the theft and concealment of "objects of cultural heritage" as defined in 18 U.S.C. §668, the defendant does not and cannot deny such a pattern existed and that it involved misconduct of cultural heritage resources.

At the time this filing, the defendant has not filed a sentencing memorandum laying out the grounds he believes that this enhancement does not apply. However, the Government filed a sentencing memorandum outlining its position on the same issue for co-defendant Damien Boland. The Government asks to incorporate by reference those arguments here, and notes that the Court has already found that this sentencing enhancement applies as to co-conspirators Thomas Trotta and Damien Boland.

<u>The Inclusion of Loss Amount from the Ringwood Manor and Yogi Berra Thefts is Proper</u>

The Defendant also objects to the inclusion, for loss amount purposes, of the thefts from Ringwood Manor and the Yogi Berra Museum & Learning Center.  (Doc. 349).   In Count 1 of the Indictment, Defendant Atsus was charged with conspiring to commit theft of major artwork, concealment/disposal of major artwork, and the interstate

9

transportation of stolen property.  The Government established at trial, and the jury agreed, that Defendant Atsus committed this crime.  (Doc. 305).

The overt acts listed in Count 1 of the Indictment allege that Atsus was an important participant in the Ringwood Manor theft in March of 2011, and the Yogi Berra Museum & Learning Center theft in October of 2014.  In both cases, Atsus acted as the driver, transporting one or more co-defendants to and from the victim museums to allow his co-conspirators to break into the museums and steal objects of cultural heritage.  After the burglaries, Atsus drove the other co-conspirators back to Pennsylvania where they eventually shared in their ill-gotten gains.

Counts 7 and 11 of the Indictment charged Atsus solely with the concealment and/or disposal of the stolen objects of cultural heritage from those thefts.  The elements of these crimes, namely the concealment or destruction of stolen objects of cultural heritage, are distinct from the elements of theft of, or transporting across state lines, the objects of cultural heritage.  Importantly, at trial, the Government established that other co-conspirators, namely Trotta, Damien Boland,

and Nicholas Dombek, were mainly responsible for the melting down of the valuable stolen items, transporting them to NYC, and selling the underlying precious metals/gems to unknown third-party brokers, not Defendant Atsus.

The Government also introduced sufficient evidence at trial to show, for the purposes of sentencing and for the offense conduct for his conspiracy conviction, that Atsus was a meaningful participant in these *thefts,* as opposed to being a meaningful participant in the *concealment.*[3]  His acquitted conduct on the substantive concealment/disposal counts related to the thefts is therefore separate and distinct from his offense conduct in his count of conviction in Count 1, i.e. the criminal agreement to steal objects of cultural heritage.

The 2024 Amendments to the Sentencing Guidelines amended U.S.S.G. §1B1.3(c) to exclude acquitted conduct, stating: "relevant conduct does not include conduct for which the defendant was

---

[3] Both Ringwood Manor and the Yogi Berra Museum & Learning Center are located in the District of New Jersey. The substantive thefts from these museums were not charged due to venue concerns.  The concealment of the stolen objects occurred largely within the Middle District of Pennsylvania.

11

criminally charged and acquitted in federal court, *unless such conduct also establishes, in whole or in part, the instant offense of conviction*."

Here, the jury found that Defendant Atsus' conduct at the Ringwood Manor and Yogi Berra thefts was sufficient for a conviction for Count 1, Conspiracy, while it was insufficient for a conviction for the substantive crimes of the concealment/disposal of the stolen items from these museums. *See McClinton v. United States*, 143 S. Ct. 2400, 2402 (2023)("acquitted conduct" is a finding that the government failed to prove an essential element of the offense beyond a reasonable doubt.)

The inclusion of the loss amount from these two museums thefts is therefore wholly appropriate, as it includes offense conduct from Count 1, and does not rely on acquitted conduct from Counts 7 and 11.

<u>Atsus is Not a Zero-Point Offender</u>

The defendant also objects to not receiving a two-level reduction for being a zero-point offender under U.S.S.G. §4C1.1(a). This argument is without merit as Atsus has a prior conviction for harassment, under Title 18 Pa. C.S.A. §2709(a)(1), after being found guilty in a summary trial in Lackawanna County in 2019. A copy of the

docket sheet for this conviction is attached to this memorandum as Government's Exhibit 1.[4]

U.S.S.G. §4A.1.1(c) calls for the assignment of one criminal history point for each "prior sentence not counted in subsection (a) or (b), up to a total of 4 points for this subsection."  U.S.S.G. §4A1.2(a) further defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."

Atsus' 2019 harassment conviction is not related to the instant offense and was imposed less than 10 prior to the instant sentence.  See U.S.S.G. §4A1.1, App. Note 3.

U.S.S.G. §4A1.2(c), does preclude counting some non-felony offenses, or "similar" offenses, unless certain criteria are met. Those offenses include: careless or reckless driving, contempt of court, disorderly conduct or disturbing the peace, false information to a police, office, resisting arrest, and others.

---

[4] 18 Pa. C.S.A. 2709(A)(1) states: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person strikes, shoves, kicks, or otherwise subjects the other person to physical contact, or attempts or threatens to do the same.

13

The Government agrees with the United States Probation Office's assessment that a Pennsylvania harassment conviction is not a "similar offense" to one of the enumerated offenses listed in U.S.S.G. §4A1.2(c), namely disorderly conduct. (Doc. 350).[5]  Pennsylvania's definition of harassment criminalizes certain activity done "with intent to harass, annoy, or alarm *another person*," which is contrasted to the Pennsylvania and federal definitions of "disorderly conduct," which consists of certain activity "performed with the purpose or intent 'to cause *public* inconvenience, annoyance, or alarm." *United States v. Elmore*, 108 F.3d 23, 26 (3d Cir. 1997)(modified on other grounds); *see also United States v. Pelker*, 821 F. App'x 93, 97 (3d Cir. 2020) (non-precedential) ("Pelker emphasizes that, like disorderly conduct, his harassment conviction is a summary offense ... But disorderly conduct does not involve an intent to harm a person, only an intent to create a public disturbance. And the difference ... is fundamental, *outweighing*

---

[5] 18 Pa. C.S.A. 5503(a) states: "a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

*any overlapping conduct or similar grading.*") (emphasis added); *United States v. Strain*, 410 F. App'x 487, 490 (3d Cir. 2011) (non-precedential) (affirming district court's determination that a Pennsylvania summary harassment offense was not "similar to" disorderly conduct in part based upon the less culpable mens rea of a typical disorderly conduct offense "which focuses on a defendant's intention 'to cause public inconvenience, annoyance, or alarm'.").

As the Pennsylvania definitions of harassment and disorderly conduct have different mens rea, they are not similar offenses and the defendant prior conviction for harassment was correctly assigned one criminal history point.

## B.    Step Two - Departures Request.

There are no departure requests.

## C.    18 U.S.C. §3553(a) Factors.

The final step in the sentencing process is the balancing of the section §3553(a) factors.  During this stage, the District Court is required to not only balance these factors but to create a sufficient record for an appeals court to have confidence that it has considered these factors. *United States v. Tomko*, 562 F.3d 558, 567d (3d Cir. 2009). While the

record does not have to address every possible argument, "a colorable argument about the applicability of one of the § 3553(a) factors" should be addressed. *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010).

### 1. Nature and circumstances of the offense.

The defendant's criminal conduct in this case was both disturbing and conducted for a lengthy period, nearly twenty years.   As the Government proved at trial, Atsus spent a large portion of his adult life involved in this conspiracy to steal priceless objects of cultural heritage, to destroy or conceal them, and sell them for cash.  In doing so, he showed utter disregard for the effects that his acts, and the acts of his co-conspirators, had on the victims in this case.

Of note is defendant Atsus' conduct while conducting his "casing" at the Space Farm Zoo & Museum.  It was clear from the video that Atsus and his co-conspirator saw the family heirlooms and other artifacts on display at the museum to be nothing more than dollar signs, waiting to be stolen by the conspirators, and that he gave no thought to the damage and loss that would be felt by the victims of his crimes.

### 2.  History and characteristics of the defendant.

As described above, despite taken part in a twenty-year conspiracy, Atsus is only a criminal history category of I. That low criminal history category is due more to law enforcement's inability to solve the plethora of burglaries that Atsus engaged in from 1999 through 2014, rather than his abstention from criminal conduct during these decades.  Therefore, Atsus Criminal History Category, like the Criminal History Category of most of his co-conspirators, does not accurately reflect the seriousness of his prior criminal conduct, nor the likelihood of future criminal conduct.

### 3.  The need for the sentence imposed.

The defendant's prolonged and wanton criminal conduct demonstrates a need for a lengthy term of incarceration.  His actions have not only caused financial hardship for the victims in this case, but his targeting of objects of cultural heritage have robbed current and future generations of the enjoyment of those priceless objects.

17

4. <u>Avoiding an unwarranted disparity.</u>

A guidelines sentence will not create an unwarranted sentencing disparity to similarly situated defendants.  The Court has already imposed the following sentences on the co-conspirators in this case:

(a) Ralph Parry – 3 years of probation

(b) Frank Tassiello – 6 months' imprisonment

(c) Dawn Trotta – 15 months' imprisonment

(d) Damien Boland –108 months' imprisonment

(e) Thomas Trotta – 96 months' imprisonment.

The Government also intends to request guidelines sentences of imprisonment of 192 months for the remaining co-defendant in this case, Nicholas Dombek.

Of the co-conspirators in this case, Joseph Atsus, Damien Boland, and Nicholas Dombek were found guilty after a nearly month-long trial. Co-conspirators Ralph Parry, Frank Tassiello, Dawn Trotta, and Thomas Trotta, pled guilty and cooperated with the Government's investigation.

Among his co-conspirators, Atsus' level of culpability is most like Damien Boland's.  Both men participated as drivers on multiple

museum thefts, conducted "casings" with co-conspirator Thomas Trotta, and concealed the stolen proceeds of their crimes for years. While Boland was properly assigned a Criminal History Category of III, not I, the long-running nature of this criminal conspiracy highlights that neither defendant's criminal history accurately reflects the amount of criminal activity they participated in during the years of 1999-2019.

A sentence slightly less than that imposed on co-defendant Boland would therefore avoid any unwarranted disparities.

Similarly, a sentence above the 96-month sentence imposed upon co-conspirator Thomas Trotta will also not cause an unwarranted disparity. While Trotta is undoubtedly more culpable than Atsus or Boland (although of a similar level of culpability as co-defendant Dombek), Trotta took extraordinary steps to right the wrongs he committed, and his extreme level of cooperation with the Government led to the unravelling of the defendants' conspiracy and the successful closure of dozens of open investigations. Trotta's cooperation also led to the recovery of several of the stolen items and ultimately to the conviction of the defendants at trial. For these reasons the Government

requested a 50% downward departure to the Court when sentencing Trotta.

Atsus, unlike Trotta, did not admit his guilt, did not cooperate with the Government, did not aid in the retrieval of the stolen property, but did force the Government and the victims in this case to go through with the time and expense of a trial. For those reasons, neither Atsus, nor his remaining co-defendant, deserves a sentence of incarceration below the 96 months given to Thomas Trotta. A sentence within the correctly calculated guidelines range, namely 97 months, would therefore be appropriate given defendant Atsus' criminal conduct, history and characteristics, and the already imposed sentences of his co-conspirators.

## IV.  CONCLUSION

For the reasons identified above, the Government requests that the Court sentence the defendant to a term of imprisonment of 97 months' imprisonment.

Dated: January 5, 2026

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

/s/ James M. Buchanan
James M. Buchanan
Assistant U.S. Attorney
PA 330012
235 N. Washington Ave., Suite 310
Scranton, PA 18503
Tel: (570) 348-2800
James.buchanan@usdoj.gov

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:23-CR-149 |
| | : | |
| v. | : | (Judge Mannion) |
| | : | |
| JOSEPH ATSUS, | : | (Electronically Filed) |
| | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on January 5, 2026, she served a copy of the attached:

## GOVERNMENT'S SENTENCING MEMORANDUM

by electronic filing on the following:

Patrick A. Casey, Esquire
Attorney for Joseph Atsus

/s/ Stephanie Kakareka
Stephanie Kakareka
Legal Administrative Specialist